1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11    JAIME PERDOMO,                 )    NO. EDCV 08-01690 SS

                             )

12               Plaintiff,       )

                             )

13           v.              )    **MEMORANDUM DECISION AND ORDER**

                             )

14    MICHAEL J. ASTRUE,        )

   Commissioner of the Social    )

15    Security Administration,      )

                             )

16             Defendant.       )

   _____)

17

18                            **I.**

19                    **INTRODUCTION**

20

21     Jaime Perdomo ("Plaintiff") brings this action seeking to overturn

22 the decision of the Commissioner of the Social Security Administration

23 (hereinafter the "Commissioner" or the "Agency") denying his application

24 for Supplemental Security Income ("SSI"). The parties consented,

25 pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned

26 United States Magistrate Judge. This matter is before the Court on the

27 parties' Joint Stipulation ("Jt. Stip."), filed on July 9, 2009. For

28 the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for SSI on April 19, 2006. (Administrative Record ("AR") 72). He claimed that his disability onset date was July 17, 1995. (AR 94). The Commissioner denied SSI benefits on September 6, 2006. (AR 75). On September 15, 2006, Plaintiff filed a request for reconsideration. (AR 80). The Commissioner upheld the initial denial of benefits on February 2, 2007. (AR 84). On March 6, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 90).

On February 26, 2008, ALJ Jay E. Levine held a hearing to consider Plaintiff's claims. (AR 33). On June 17, 2008, the ALJ found that Plaintiff was not disabled. (_See_ AR 8-22). Plaintiff requested a review of the hearing decision on July 16, 2008. (AR 4). The Appeals Council denied this request on September 23, 2008. (AR 1). Plaintiff filed the instant Complaint on December 3, 2008.

## III.

### FACTUAL HISTORY

**A.   Generally**

Plaintiff was born on August 13, 1970 and was 37 years old at the time of the hearing. (AR 94). He has limited education and did not graduate from high school. (AR 39-41). In various disability reports Plaintiff claims to have never held a job. (_See, e.g._, AR 98).

2

However, at the hearing Plaintiff testified that he had worked as a carpet cleaner and as a car windshield repairman. (AR 60). Additionally, Plaintiff works for his sister, watching her autistic son. (AR 37). Plaintiff claims that he is unable to work due to a brain injury in 1973 resulting in an inability to remember, concentrate, or answer questions. (AR 98).

**B.   Relevant Medical History**

**1.   Treating Physician**

The medical records from Plaintiff's treating psychiatrist are sparse. Plaintiff met with Dennis Payne, M.D., for the first time on October 7, 2005. (See AR 208). At the time, Dr. Payne found that Plaintiff made poor eye contact and was withdrawn. (AR 209). He also described Plaintiff as having a "poverty of speech [and] thought content." (Id.). Although Dr. Payne considered Plaintiff to be depressed and found that he exhibited "thought blocking," he also found that Plaintiff's perceptual process and thought content were within normal limits. (Id.). In Dr. Payne's opinion, Plaintiff's insight and judgment were poor, and Plaintiff's memory was impaired. (Id.). Dr. Payne ultimately concluded that Plaintiff had dementia, a non-specific depressive disorder, and borderline intellectual functionality. (Id.). Dr. Payne did not diagnose Plaintiff with any specific disorders. (Id.). Dr. Payne prescribed Paxil. (Id.).

Plaintiff returned to Dr. Payne intermittently for several months, and the treatment notes from that period are few and brief. (See AR

3

290-311).   When Plaintiff complied with Dr. Payne's treatment plan, the medication was "fairly effective." (AR 306).   Plaintiff's sister, who accompanied him on his visits to Dr. Payne, reported that he was doing better, with a fifty-percent improvement.  (AR 297-98).   There were, however, numerous times when Plaintiff failed to keep his appointments with Dr. Payne, (<u>see</u> AR 291, 300, 304, 308), or was not fully compliant with the treatment plan.  (<u>See</u> AR 305, 203).

Dr. Payne apparently was not aware of any substance abuse by Plaintiff.  (AR 310).  However, Plaintiff has a significant history of illegal drug use and alcoholism.  He was arrested for driving under the influence of alcohol and methamphetamine.  (AR 159).  Plaintiff "drank heavily" until 2001 or 2002.  (<u>Id.</u>).  He began using illicit drugs at age thirteen, and was a chronic user of marijuana, cocaine, and methamphetamine until 2002.  (<u>Id.</u>).  Plaintiff's parents asked him to stop living with them, in part, because of his drug use.  (AR 158).

Although Dr. Payne did not specifically address his lack of knowledge about Plaintiff's substance abuse history, he did admit that he did not have a "good feel" for Plaintiff.  (AR 227).  When Dr. Payne met with Plaintiff, Plaintiff was always accompanied by his sister, who did most of the talking.  (<u>Id.</u>).  Dr. Payne stated that most of what he knows about Plaintiff comes from Plaintiff's sister.  (<u>Id.</u>).

**2.  Consultative Physicians**

On September 30, 2003, Dr. Jagvinder Singh performed an internal medicine consultation on Plaintiff.  (<u>See</u> AR 152-56).  Dr. Singh is

4

board certified in internal medicine. (AR 156). Plaintiff complained to Dr. Singh that he had memory problems, depression, and that he was unable to control his anger. (AR 152). Dr. Singh opined that Plaintiff did not have dementia, but noted that Plaintiff was "[a] little slow on mathematical skills." (AR 155). Dr. Singh reported that Plaintiff had "no problem in dressing, grooming and bathing himself. [Plaintiff did] cooking, vacuuming, dishwashing, and watches television." (AR 152). In evaluating Petitioner's physical ability to work, Dr. Singh stated:

> I think that [Plaintiff] is able to stand and walk for 6 hours. Sitting is no restriction. He does not require the use of assistive devices. He would be able to lift and carry occasionally and frequently is [sic] 50 & 25 pounds. Posturally and manipulatively there are no restrictions. Environmentally, [Plaintiff] should avoid working at extremes of temperature and at heights.

(AR 156).

On October 1, 2003, Dr. Kim Goldman, a clinical psychologist, performed a psychological evaluation of Plaintiff. (See AR 158-62). During the examination, Plaintiff "responded in a coherent and relevant fashion. The rate of his speech was normal." (AR 159). He knew the day of the week and the date, and he knew both the city of the examination and his city of residence. (Id.). Plaintiff knew his age and birthday, as well as the current and previous President. (Id.). He was able to recall two of three objects after a five minute delay. (Id.). Nonetheless, Plaintiff was low functioning in some categories.

5

He claimed not to know the alphabet and could not recite it.  (AR 160).
Dr. Goldman found Plaintiff's I.Q. to be sixty-four.  (Id.).  His
overall thinking and reasoning abilities were in the first percentile.
(Id.).

    Dr. Goldman specifically warned readers of the report that
Plaintiff's test results "should be interpreted with caution as
[Plaintiff] did not appear to make his best effort on the tasks
presented to him." (Id.).  Dr. Goldman specifically cited Plaintiff's
inability to reproduce more than nine out of fifteen items from memory
as evidence of not making his best effort on the tests.  (AR 161).  Dr.
Goldman ultimately concluded that:

> [Plaintiff's] ability to understand, carry out and remember
> simple instructions is not impaired.  His ability to respond
> appropriately to coworkers, supervisors and the public is
> mildly impaired due to limits in his cognitive functioning.
> His ability to respond appropriately to usual work situations
> and deal with changes in a routine work setting is mildly to
> moderately impaired due to limits in his cognitive
> functioning.

(AR 162).

    On January 13, 2004, Dr. John Woodard performed a psychological
evaluation of Plaintiff.  (See AR 184-87).  Dr. Woodard is a board
eligible neurologist and psychiatrist.  (AR 187).  Dr. Woodard found

that Plaintiff had a history of abusive alcohol consumption as well as methamphetamine abuse. (AR 184).

In evaluating Plaintiff's intellectual functioning, Dr. Woodard found that Plaintiff could recall both the current President and three former Presidents. (AR 186). Plaintiff had knowledge of current events. (Id.). He could "subtract sevens serially from 100 to 72 without error," and had an average range vocabulary. (Id.). Dr. Woodard found that:

> [Plaintiff's] [i]mpairments are slight to moderate for interacting with the public; slight for interacting with supervisors and co-workers, for maintaining concentration and attention, for withstanding normal stresses and pressures in the workplace, and for performing detailed, complex tasks; and none for performing simple repetitive tasks. Incapacity is slight for working on a continuous basis without special supervision and slight to moderate for completing a normal workweek without interruption.

(Id.). Dr. Woodard concluded that Plaintiff's prognosis was "good for improvement in psychiatric status with abstinence from alcohol and illegal drugs and with appropriate treatment." (AR 187).

Plaintiff's final consultative examination was on May 5, 2006, with Dr. Clifford Taylor, a licensed clinical psychologist. (See AR 190-94). During this evaluation, Plaintiff stated that he had never worked in any capacity, and his sister stated that he had never attended school. (AR

191).  Plaintiff denied any current or past use of illegal drugs, and also denied ever being arrested.  (Id.).  Neither Plaintiff nor his sister provided Dr. Taylor with any medical records.  (AR 191-92).

Dr. Taylor evaluated Plaintiff's mental status and found that he had an I.Q. of forty-eight.  (AR 192).  Plaintiff "could not count, say any letters from the alphabet, recognize shapes, does not know his last name, age, the date or the date of his birth.  He could not point to simple body parts such as his nose and ear."[1]  (Id.).  Given Plaintiff's performance on these evaluations, Dr. Taylor suspected Plaintiff of malingering.  (AR 192, 194).

### 3.  Plaintiff's Testimony

Plaintiff testified at the disability hearing.  (AR 36-66).  Plaintiff knew his age and the place of his birth.  (AR 36).  He denied being able to drive a car.  (AR 40).  Plaintiff testified that he could read and write "[a] little bit," and that he had taught himself to read.  (Id.).  Plaintiff testified that he went to school, but could not remember for how long.  (AR 40-41).  Plaintiff admitted to drinking "once in a while" and having used marijuana, speed, and cocaine "a long time ago."  (AR 42).  Plaintiff testified that he sits at his sister's house during the day and takes care of his nephew, who he called "Alex."  (Id.).  According to Plaintiff's sister, the nephew's name is "Viviano."

---

[1]  During Plaintiff's physical examination, Dr. Singh reported that the "[f]inger-to-nose exam is precise."  (AR 154).

(Id.).  Plaintiff then testified that he does not know who Alex is.  (AR 43).

In response to the ALJ's questions about physical problems, Plaintiff testified that he was tired because he could not breathe. (Id.).  He denied ever being in the hospital, but then admitted that he was hospitalized after a childhood car accident.  (AR 43-44).  Plaintiff did not know the name of any medication he was taking.  (AR 44). Plaintiff was not in any pain at the time of the hearing.  (AR 53).

The ALJ and a Vocational Expert (VE) questioned Plaintiff about his work history.  Plaintiff testified that he washed cars at a car wash for one month.  (AR 46).  Plaintiff reported an income of $3,672 in 2006, but claimed that he did not know what he did to make money that year. (Id.).  In addition to washing cars, Plaintiff worked cleaning carpets and repairing car windshields.  (AR 60).

**4.  Lay Witness Testimony**

Plaintiff's sister also testified at the hearing.  She told the ALJ that Plaintiff had been living with her for two years, and she paid him $380 per month to watch her autistic son.  (AR 37).  According to Plaintiff's sister, Plaintiff's mental problems began after he was hit by a car when he was three years old.  (AR 47-48).  The sister testified that she has never seen Plaintiff have any friends.  (AR 50).  She acknowledged that Plaintiff's parents had problems with him drinking, but that she did not allow him to drink in her house unless under her supervision.  (AR 51-52).

9

The ALJ asked Plaintiff's sister about Plaintiff's ability to "get [himself] ready for work, get dressed, . . . brush [his] teeth, comb [his] hair, . . . [and] fix some food for [himself]." (AR 52). She testified that Plaintiff "tries to do [these things] but he doesn't succeed." (Id.). Plaintiff's sister gives Plaintiff his medication and makes sure that he takes it. (AR 53).

Plaintiff's sister testified about his medical history. According to her, Plaintiff takes Risperdal and, separately, Albuterol for "severe asthma." (AR 55). Plaintiff was hospitalized twice during his childhood: once following the car accident and once after Plaintiff was beaten with a baseball bat. (AR 56).[2] According to Plaintiff's sister, Plaintiff has mood swings. (AR 58).

Plaintiff's sister testified that Plaintiff worked at a car wash in 2006. (AR 61). She thought that he only worked at the car wash for one month. (Id.). When confronted with the fact that Plaintiff was unlikely to have earned $3,600 in one month working at a car wash, Plaintiff's sister claimed the she could not remember if he had worked elsewhere or for more than one month. (AR 62).

---

[2]   Plaintiff denied any memory of the baseball bat beating. (AR 57).

# IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months. <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

---

[3]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1520, 416.910.

(3)   Does the claimant's impairment meet or equal the
      requirements of any impairment listed at 20 C.F.R. Part
      404, Subpart P, Appendix 1?  If so, the claimant is found
      disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If
      so, the claimant is found not disabled.  If not, proceed
      to step five.

(5)   Is the claimant able to do any other work?  If not, the
      claimant is found disabled.  If so, the claimant is found
      not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§
404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and
the Commissioner has the burden of proof at step five.  Bustamante, 262
F.3d at 953-54.  If, at step four, the claimant meets his burden of
establishing an inability to perform the past work, the Commissioner
must show that the claimant can perform some other work that exists in
"significant numbers" in the national economy, taking into account the
claimant's residual functional capacity, age, education and work
experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The
Commissioner may do so by the testimony of a VE or by reference to the
Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart
P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240

12

1   F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional
2   (strength-related) and nonexertional limitations, the Grids are
3   inapplicable and the ALJ must take the testimony of a VE.  <u>Moore v.</u>
4   <u>Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

5

6                                    **V.**

7                          **THE ALJ'S DECISION**

8

9        At step one, the ALJ rejected Plaintiff's assertion that he had not
10  engaged in substantial gainful activity since April 19, 2006.  (AR 10).
11  The ALJ determined that Plaintiff had worked since his alleged onset
12  date.  (<u>Id</u>.).  Plaintiff cared for his sister's autistic child and
13  worked at a car wash and as a floor cleaner.  (<u>Id</u>.).  The ALJ found
14  "that this work activity was performed long enough for it to be
15  considered substantial gainful activity."  (<u>Id</u>.).

16

17       At step two, the ALJ found that Plaintiff's impairments were
18  borderline intellectual functioning, alcohol dependence, and organic
19  brain disorder.  (<u>Id</u>.).  Because the ALJ found that these impairments
20  affected Plaintiff more than minimally, the ALJ concluded they should be
21  considered severe.  (<u>Id</u>.).

22

23       At step three, the ALJ concluded that Plaintiff "does not have an
24  impairment or combination of impairments that meets or medically equals
25  one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix
26  1."  (<u>Id</u>. (internal citations omitted)).

27

28

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform very heavy work. (AR 11). The ALJ found that, due to Plaintiff's mental impairment, he should be limited to "routine, repetitive tasks, consisting of entry level work, and working with things rather than people." (Id.). Based on the VE's testimony that Plaintiff's past relevant work as a car wash cleaner and a floor cleaner amounted to unskilled work performed at a light or medium level of exertion, the ALJ found that Plaintiff could perform his past relevant work. (AR 20).

Although the ALJ found that he did not need to move to step five, he did so to consider the alternative situation in which Plaintiff's past jobs were not considered past relevant work. (AR 21). The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity. (Id.). He concluded that Plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id.).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

14

1    "Substantial evidence is more than a scintilla, but less than a
2    preponderance." Reddick, 157 F.3d at 720.   It is "relevant evidence
3    which a reasonable person might accept as adequate to support a
4    conclusion." Id.   To determine whether substantial evidence supports a
5    finding, the court must "'consider the record as a whole, weighing both
6    evidence that supports and evidence that detracts from the
7    [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny
8    v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).   If the evidence can
9    reasonably support either affirming or reversing that conclusion, the
10   court may not substitute its judgment for that of the Commissioner.
11   Reddick, 157 F.3d at 720-21.

12

13                                   **VII.**

14                                 **DISCUSSION**

15

16   **A.   The ALJ Gave Appropriate Weight To The Treating Psychiatrist's**
17        **Opinion**

18

19       Plaintiff contends that "the ALJ did not properly consider all of
20   Dr. Payne's findings and failed to provide specific and legitimate
21   reasons for doing so." (Jt. Stip. at 4).   This Court disagrees.

22

23       Dr. Payne's findings are discussed above in section III.B.2.   The
24   relationship between Plaintiff and Dr. Payne was limited.   Plaintiff met
25   with Dr. Payne approximately twelve times for generally twenty minutes
26   per session.   (AR 290-311).   During his time under Dr. Payne's care,
27   Plaintiff cancelled his sessions or failed to show up eight times.   When
28   Plaintiff did keep his appointments his sister came with him, and she

                                    15

provided most of the information to Dr. Payne.  (AR 227).  As a result, Dr. Payne later reported that he did not have a "good feel" for Plaintiff.  (<u>Id</u>.).  Despite Dr. Payne's limited relationship with Plaintiff, the treatment he recommended appears to have been effective. Plaintiff's sister reported a fifty percent improvement, with Plaintiff becoming calmer.  (<u>See, e.g.</u>, AR 205-06).


     If the treating physician's opinion is contradicted by another doctor who uses the same clinical findings as the treating physician, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).  The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual.  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).  If, however, the non-treating physician bases her opinion on independent clinical findings that differ from those of the treating physician, "the opinion of the nontreating source may itself be substantial evidence; it is solely the province of the ALJ to resolve the conflict."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).


     Although the treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability."  <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th

Cir. 1992).   The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.   See Matney, 981 F.2d at 1019; Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ concluded that "[g]iving [Plaintiff] a generous benefit of the doubt . . . he is of borderline intelligence and he has an organic brain disorder." (AR 18).   Plaintiff argues that "there was no mention of . . . Plaintiff's poor insight and judgment, as well as . . . Plaintiff's impaired memory to immediate, recent and remote events." (Jt. Stip. at 4).   The ALJ's finding that Plaintiff was of borderline intelligence and had an organic brain disorder was an acceptance of Dr. Payne's findings.     Although Plaintiff faults the ALJ for not specifically mentioning Dr. Payne's opinions of Plaintiff's insight, judgment, and memory, Plaintiff fails to show why this omission was material.   The check off boxes concerning Plaintiff's insight, judgment, and memory are part of the "Mental Status" section of the form Dr. Payne filled out, and these opinions presumably factored in to Dr. Payne's ultimate diagnosis of dementia, unspecified depressive disorder, and borderline intellectual functionality.   (See AR 208-09).

To the extent the ALJ rejected or discounted some of Dr. Payne's opinions, i.e., Dr. Payne's conclusions about Plaintiff's insight, judgment, and memory, he gave specific and legitimate reasons for doing so.   The ALJ noted that the State Agency analyst called Dr. Payne and discussed Dr. Goldman's findings.   Dr. Payne admitted that he did not "have a good feel" for Plaintiff.   (AR 16).   He also stated that

17

Plaintiff did not appear to be "severely retarded," (Id.), and that the concerns of the consultative psychologists, i.e., that Plaintiff was malingering, had merit. (Id.). Dr. Payne acknowledged that during Plaintiff's examinations, most of the information was provided by Plaintiff's sister. Dr. Payne acknowledged that there were "conflicting elements" underlying his diagnosis, such as a lack of a documented history of medical treatment and an absence of IQ testing. (Id.).

All of these admissions by Dr. Payne were specific and legitimate reasons to discount his opinions regarding Plaintiff. No remand is necessary.

**B.    The ALJ Properly Considered The State Agency Psychiatrist's Findings**

Plaintiff contends that the ALJ failed to consider the findings of Dr. Gregg, a State Agency psychiatrist. (Jt. Stip. at 10-12). This Court disagrees.

On October 14, 2003, Dr. K. Gregg completed a Mental Residual Functional Capacity Assessment of Plaintiff. (AR 163-65). Dr. Gregg found that Plaintiff was "Not Significantly Limited" in fourteen of the twenty categories evaluated. (AR 163-64). Plaintiff was not "Markedly Limited" in any categories. (Id.). According to Dr. Gregg, Plaintiff was moderately limited in six categories:

1.    The ability to understand and remember detailed instructions;

2.    The ability to carry out detailed instructions;

3.    The ability to maintain attention and concentration for extended periods;

4.    The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

5.    The ability to interact appropriately with the general public;

6.    The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

(Id.).  Dr. Gregg ultimately concluded that Plaintiff could "sustain simple repetitive tasks with adequate pace and persistence.  [Could] adapt and relate to coworkers and [supervisors].  Cannot work with public."  (AR 165).

Plaintiff points to 20 C.F.R. § 416.927(f) and Social Security Ruling 96-6p to support his allegation that the ALJ's failure to discuss Dr. Gregg's opinion was error.  The regulations state that the administrative law judges are not bound by any findings by a State Agency medical or psychological consultant.  20 C.F.R. § 416.927(f)(2)(I).  However, because these Agency physicians and psychological consultants are highly qualified and are also experts in

19

Social Security disability evaluations, the regulations state that the ALJs "must consider" findings from an Agency physician. <u>Id.</u> Furthermore, unless the treating physician's opinion is given controlling weight, the administrative law judge "must explain in the decision" the weight given to the Agency physician's opinion, as the ALJ must do for any opinion from a treating source or a nontreating source. 20 C.F.R. § 416.927(f)(2)(ii).

Social Security Ruling 96-6p also states that the findings of fact made by an Agency physician "must be treated as expert opinion evidence" by the ALJ. An ALJ "may not ignore these opinions and must explain the weight given to these opinions in their decisions." <u>See</u> SSR 96-6p, 1996 WL 374180, *1. Although Social Security Rulings do not have the force of law, they are binding on all components of the Social Security Administration and courts give them some deference. <u>See</u> 20 C.F.R. § 402.35(b)(1); <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (holding that although Social Security Rulings that are issued by the Commissioner of Social Security to clarify implementing regulations and agency policies do not have the force of law, reviewing courts will give them some deference because they represent the Commissioner's interpretations of the agency's regulations, unless they are inconsistent with statutes or regulations).

The ALJ considered Dr. Gregg's findings. (AR 17). Dr. Gregg found that Plaintiff could "sustain simple repetitive tasks." (AR 165). The ALJ concluded that Plaintiff was limited to "routine, repetitive tasks." (AR 11). Dr. Gregg found that Plaintiff "[c]annot work with [the] public." (AR 165). The ALJ found that Plaintiff was limited to

"working with things rather than people." (AR 11).  Although the ALJ did not specifically address the categories in which Dr. Gregg found Plaintiff to have moderate limitations, none of those moderate limitations contradict the ALJ's conclusion about Plaintiff's RFC. Plaintiff fails to show how the ALJ erred in his consideration of Dr. Gregg's findings.  No remand is required.

**C.   The ALJ Properly Determined That Plaintiff Could Perform His Past Relevant Work**

Plaintiff contends that the ALJ erred in concluding that Plaintiff could perform his past relevant work.  According to Plaintiff, the past jobs "require mental demands that are in excess of the Plaintiff's RFC." (Jt. Stip. at 16).  This Court disagrees.

Plaintiff was not specific about his previous work.  He testified that he worked at a car wash, but did not go into detail about what exactly he did there.  (See AR 46).  Plaintiff later admitted that he repaired car windshields at the car wash. (AR 60).  Plaintiff testified that he worked cleaning carpets, but claimed that he remembered nothing about the job.  (Id.).  Plaintiff has the burden of showing that he could not perform the job as actually performed or as generally performed. See Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) (at step four of the sequential evaluation process, claimant has burden of proving an inability to return to his former "type of work" and not just to his former job).  See also Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (plaintiff has the burden of proving that he can no longer perform his past relevant work); SSR 82-61 (if claimant cannot perform

the functional demands and job duties of his former job as actually required but can perform the functional demands and job duties as generally required by employers, he should be found not disabled).

Initially, it should be noted that if an ALJ determines that an individual can return to his past relevant work, no VE testimony is necessary. Additionally, the Court notes that the determination at step four that a claimant can perform his past relevant work need not be supported by VE testimony. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996).

Nonetheless, the ALJ heard the testimony of a VE. The VE testified that Plaintiff's work at the car wash was "as an automatic car wash attendant, [which is] characterized as light and having a specific vocational preparation of a two and make it un-skilled." (AR 65). The VE evaluated Plaintiff's work cleaning carpets as "an occupation of floor cleaner, [which is] characterized as medium work and having a specific vocational preparation code of two would make it un-skilled." (AR 66). The ALJ found that these jobs were within the capabilities of Plaintiff, who had "the residual functional capacity to perform very heavy work activities. His mental impairment limits him to routine, repetitive tasks, consisting of entry level work, and working with things rather than people. [Plaintiff] is precluded from working at unprotected heights and work with dangerous machinery. He cannot perform work requiring production quotas such as assembly line or piece work." (AR 11).

Plaintiff argues that the job of Rug Cleaner requires a greater reasoning level than could be expected of Plaintiff. (AR 13). Although the VE testified that the Rug Cleaner reasoning level was two, it is actually three. (Directory of Occupational Titles ("DOT") at No. 369.384-014). The Court notes that the ALJ need only find that Plaintiff can return to his former job as he performed it, not necessarily as it is defined in the DOT.

Even though there was a conflict between the DOT's requirements for a Rug Cleaner and the VE's description of the position, there was no similar conflict for the car washer position. The position of Automatic Car Wash Attendant only requires a reasoning level of two. (DOT at No. 915.667-010). A reasoning level of two requires a worker to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions[, and also] [d]eal with problems involving a few concrete variables in or from standardized situations." (DOT Appendix C, Section III). Plaintiff argues that because Dr. Gregg found that Plaintiff was moderately impaired in the ability to understand and remember detailed instructions, he was unable to perform this job. (AR 15).

Plaintiff has not met his burden of showing that he can no longer perform his previous job at the car wash. Plaintiff estimated that he worked at the car wash for one month in 2005. (AR 46). He worked at the car wash long enough to earn "a little over $2,600.00." (AR 45). Plaintiff contends that "it is clear that he is incapable of performing the job[] of . . . car washer." (Jt. Stip. at 18). However, he presents no evidence that his level of disability has increased since

the time he was able to work as a car washer.  Dr. Gregg's finding of moderate impairment in the ability to understand and remember detailed instructions therefore does not amount to a finding that Plaintiff cannot perform a job requiring a reasoning level of two.

The ALJ and the VE correctly concluded that Plaintiff was capable of returning to his previous work as a car wash attendant.  Based on this alone, the ALJ was correct in finding that Plaintiff is not disabled.  Any error the ALJ and the VE may have made concerning the DOT requirements for the rug cleaner position was harmless.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability); Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984).  No remand is required.

**D.   The ALJ's Hypothetical Was Sufficient**

Plaintiff argues that the hypothetical presented by the ALJ was incomplete because it did not mention the moderate impairments described by Dr. Gregg or the poor insight and judgment and the impaired memory reported by Dr. Payne.  (Jt. Stip. at 19).  Plaintiff contends that this requires a remand.  (Jt. Stip. at 20).  This Court disagrees.

First, as discussed above in section VII.C, no VE testimony was necessary in this case because the ALJ found that Plaintiff was able to return to his past relevant work.  However, even if VE testimony had been required, the hypotheticals provided by the ALJ sufficiently

described Plaintiff's limitations.   The hypotheticals were based on Plaintiff's RFC, which allowed him

> to perform very heavy work activities.  His mental impairment limits him to routine, repetitive tasks, consisting of entry level work, and working with things rather than people. [Plaintiff] is precluded from working at unprotected heights and work with dangerous machinery.   He cannot perform work requiring production quotas such as assembly line or piece work.

(AR 11).   In the first hypothetical, the ALJ asked the VE to

> assume [an individual Plaintiff's] age, education which would have been less than a high school education but a limited education for sure or less. . . .   A person's has no exertional limitations [sic] . . . except very heavy.   But assume this person should not work around dangerous machinery and no work on unprotected heights and restricted to routine, repetitive tasks, entry level work and working with things rather than with people and also no production quotas such as assembly line or piece work.

(AR 66-67).   Given this hypothetical, the VE determined that such a claimant could perform the work as a floor cleaner.  (AR 67).   In the second hypothetical, the ALJ asked the VE to "assume a hypothetical individual [with] the same restrictions as in [the first hypothetical]. This person would be off task at least 20 percent of the time due to

1    inability to maintain concentration or pace." (Id.).  The VE concluded
2    that such an individual could not perform any work.  (Id.).

3

4         Plaintiff does not object to any of the limitations included in the
5    hypotheticals.  (See Jt. Stip. at 19).  Instead, he argues that the
6    "hypothetical questions [were] incomplete" because they did not
7    specifically mention some of Dr. Gregg's and Dr. Payne's findings.
8    (Id.).  As part of his mental examination of Plaintiff, Dr. Payne noted
9    that Plaintiff exhibited poor judgment and insight as well as impaired
10   memory.  (AR 209).  As discussed above in section VII.A, the ALJ
11   properly considered Dr. Payne's findings in determining Plaintiff's RFC.
12   Also as discussed in section VII.A, to the extent that the ALJ rejected
13   Dr. Payne's conclusions about Plaintiff's judgment, insight, and memory,
14   he did so for specific and legitimate reasons.  As discussed above in
15   section VII.C, Dr. Gregg's conclusions about Plaintiff's moderate
16   impairments did not contradict the ALJ's determination of Plaintiff's
17   RFC.  Because the ALJ properly determined Plaintiff's RFC he was not
18   required to include in the hypotheticals any other limitations.  See
19   Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).

20

21        Because the ALJ properly determined that Plaintiff could return to
22   his prior relevant work, no hypotheticals or VE testimony was necessary.
23   However, the hypotheticals presented to the VE accurately reflected the
24   RFC determined by the ALJ.  The RFC was an accurate statement of
25   Plaintiff's clearly established limitations.  Therefore, no remand is
26   required.
27   \\
28   \\

**E.   The ALJ Was Not Required To Obtain Records Pertaining To Plaintiff's Special Education Classes**

Plaintiff argues that the ALJ failed to fully develop the record of Plaintiff's disability.  (Jt. Stip. at 21-22).   The ALJ noted that Plaintiff had been in Special Education classes.  (AR 19).   Plaintiff contends that "records regarding Plaintiff's special education classes are not included in the current record, and the ALJ should have developed the record further by obtaining these records." (Jt. Stip. at 21-22).  This Court disagrees.

The ALJ has an affirmative duty to fully and fairly develop the record in a social security case.  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001).  However, only ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry or gather additional information.   <u>Id.</u>, <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002) (duty not triggered where the ALJ did not make a finding that the medical report was inadequate to make a disability determination).

The medical report in this case was more than adequate to make a disability determination.   In addition to the records from Dr. Payne, Plaintiff's treating psychiatrist, the Commissioner arranged for four additional consultative examinations.  Dr. Goldman found that Plaintiff had only mild to moderate limitations, (AR 162), and Dr. Woodard described Plaintiff's limitations as slight to moderate.   (AR 186).  Both Drs. Goldman and Taylor suspected Plaintiff of malingering on their

1  tests.  (<u>See</u> AR 161, 192, 194).  Even Dr. Payne, Plaintiff's treating

2  physician, thought that charges of malingering had merit.  (AR 227).

3  The Commissioner will recontact medical sources only when the medical

4  evidence "is inadequate" for the Commissioner to determine whether a

5  claimant is disabled.  20 C.F.R. § 416.912(e).  The Commissioner will

6  either seek additional evidence or clarification from the treating

7  physician when a medical report contains a "conflict" or an "ambiguity"

8  that must be resolved.  20 C.F.R. § 416.912(e)(1).  In this case there

9  was no conflict or ambiguity that had to be resolved, nor did the ALJ

10  make such a finding.

11

12      Although Plaintiff claims that the mention of his Special Education

13  attendance renders the record ambiguous, he fails to articulate what

14  would be found in his school records that would be meaningful to the

15  ALJ's evaluation.  At the time of the hearing, his attorney failed to

16  mention these records.  Counsel could have submitted these records prior

17  to the hearing, but failed to do so.  There is no evidence in the record

18  that Plaintiff or his attorney requested that the agency obtain these

19  records.  Plaintiff does not describe these records in any detail nor

20  offer any explanation as to how they would alter the evaluation of his

21  alleged disability.

22

23      Four consultative doctors evaluated Plaintiff's mental limitations.

24  This was sufficient to develop the record.  Accordingly, no remand is

25  required.

26

27

28

28

**VIII.**

**CONCLUSION**

The ALJ properly considered the opinions of Dr. Payne, Plaintiff's treating physician and Dr. Gregg, the State Agency psychiatrist. The ALJ properly determined Plaintiff's RFC and his ability to return to his past relevant work. The hypothetical posed to the VE was complete. Finally, the ALJ met his responsibility to fully develop the record. Accordingly, Plaintiff's contentions do not warrant remand.

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 14, 2009.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[4] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."